*UNITED STATES DISTRICT COURT*
*SOUTHERN DISTRICT OF NEW YORK*

------------------------------------------------------------ x
*LAXMINARAYAN LODGING, LLL, d/b/a* :
*QUALITY INN,* :
: **OPINION GRANTING**
                      *Plaintiff,* : **MOTION FOR SUMMARY**
: **JUDGMENT AND DENYING**
   *-against-* : **MOTION FOR PARTIAL**
: **SUMMARY JUDGMENT**
:
*FIRST SPECIALTY INSURANCE CORPORATION,* : 21 Civ. 7506 (AKH)
:
                      *Defendant.* :
:
------------------------------------------------------------ x

ALVIN K. HELLERSTEIN, U.S.D.J.:

        The instant dispute arises out of an insurance policy agreement between First Specialty Insurance Corporation ("Defendant") and Laxminarayan Lodging, LLC d/b/a Quality Inn ("Plaintiff"). Plaintiff brings suit against Defendant for breach of the policy and to compel appraisal as provided in the policy. Plaintiff claims that it suffered losses caused by windstorms dated June 10, 2020, and July 13, 2020 and issued a demand for appraisal. Defendant has paid some of Plaintiffs claim as to the June 10 occurrence and resists appraisal. I previously denied Plaintiff's motion to compel appraisal, noting that the factual dispute as to whether coverage q

        Having conducted discovery, the Parties now cross-move for summary judgment, with Plaintiff seeking summary judgment compelling appraisal, and Defendant seeking partial summary judgment limiting the Period of Liability under the policy and dismissing Plaintiff's claims based on an alleged breach of the implied covenant of good faith and fair dealing. *See* Motion for Partial Summary Judgment ("Def. Motion"), ECF No. 55; Motion for Summary Judgment ("Pl. Motion"), ECF No. 60. The sole issues for resolution are (1) whether the Parties' dispute involves coverage issues, thereby precluding appraisal; (2) whether the liability period for a business income claim may be extended by alleged delays caused by the insurer; and (3)

1

whether Plaintiff's breach of contract claim can support consequential damages for breach of the implied covenant of good faith and fair dealing. For the reasons provided below, Plaintiff's motion for summary judgment is granted, and Defendant's motion for partial summary judgment is denied.

## BACKGROND

The undisputed facts are as follows. Plaintiff is the owner and operator of a hotel located in Colby, Texas (the "Property"). See Second Amended Complaint ("Compl."), ECF No. 19; Plaintiff's Undisputed Material Facts Pursuant to Local Rule 56.1 ("Pl. SUF") ¶ 1, ECF No. 61.[1] At all relevant times, the Property was insured under a policy issued by Defendant. Pl. Motion Ex. 3, ECF No. 62-3 (the "Policy"). The Policy was in effect from December 24, 2019 through November 2020 and "insure[d] all risks of direct physical loss or damage to [the Property.]" *Id.* at 1. The Policy also included an Appraisal clause, which provides in part:

> Appraisal Provision. If the Insured and the Company fail to agree on the amount of loss to be paid for a claim insured by this POLICY and a resolution cannot be achieved through the negotiation and mediation process as set forth above, and the parties do not mutually agree to submit the dispute to be determined through binding arbitration, either may elect to have that dispute resolved by appraisal by making a written demand upon the other. The venue of the appraisal shall be the State and County of the mailing address for the Insured as set forth in the Declarations of this POLICY. Each party shall select a competent and disinterested appraiser within twenty (20) days after the 3 written demand for appraisal is made.

*Id.* at 43.

On June 10, 2020, a windstorm impacted the Property, causing damage to three buildings on the Property. Pl. SUF ¶¶ 6-7. The storm resulted in damage to the asphalt shingle roof coverings of the buildings and water damage to the interior of the buildings. *Id.* ¶¶ 8-9.

---

[1] I refer to Plaintiff and Defendant's respective statements of undisputed facts but include only those confirmed as undisputed in the respective counterparty's counter-statements.

2

Plaintiff retained a public adjuster, who measured the total damage to the buildings (including emergency mitigation services) to be $715,665.08. *Id.* ¶ 11. In response to the initial information provided by Plaintiff concerning the loss, Plaintiff was issued a $50,000 advance payment net of the applicable $100,000 deductible. Defendant's Undisputed Material Facts Pursuant to Local Rule 56.1 ("Def. SUF") ¶ 6, ECF No. 66. Defendant retained JS Held to conduct an engineering evaluation and determine the cause and extent of the loss. Pl. SUF ¶ 12. Defendant determined that $166,567 ($16,567 net the $100,000 deductible and $50,000 advance payment) was owed under the policy, including allocations for emergency services, building repairs, and roof tarps. Pl. SUF ¶¶ 13-14. The scope of repairs Defendant acknowledged included roof system repairs to three buildings and minor interior repairs to two of those buildings. ¶ 15.

On July 13, 2020, another windstorm impacted the Property, and Plaintiff's public adjuster calculated damages from that windstorm as $608,213.68. *Id.* ¶¶ 16, 18. In correspondence with Plaintiff on February 8, 2021, Defendant stated:

> Inasmuch as the Quality Inn has not provided any evidence of damages attributable solely to the alleged July 13, 2020 occurrence which are separate and independent from the damages claimed by the Quality Inn with respect to the June 10th loss, the Insurers must reject the Proof of Loss attributable to the alleged July 13, 2020 occurrence as unsupported and excessive.

*Id.* ¶ 20. Defendant also stated that the emergency repairs and mitigation work performed by Plaintiff prior to Defendant's inspection impermissibly prejudiced Defendant's ability to identify the alleged additional damage attributable to the July 13, 2020 storm. *Id.* ¶ 21.

On August 26, 2021, Plaintiff demanded appraisal pursuant to the Policy's Appraisal clause to set the amount of loss from the storm losses, and Defendant subsequently refused the appraisal demand. *Id.* ¶¶ 23-24. Defendant claimed it had "previously paid its proportionate share of the undisputed damage measure related to the June 10, 2020 loss." *Id.* ¶

25. Defendant additionally stated that appraisal could not be invoked due to the following coverage issues concerning Plaintiff's claim: (1) whether direct physical loss or damage occurred during the relevant policy period; (2) whether the loss constituted a "prior loss;" (3) whether the loss was barred by the wear and tear exclusion in the Policy; (4) whether the age of the roof restricts the valuation of any damage to actual cash value ("ACV"); (5) whether the cosmetic damage exclusion in the Policy bars coverage for any roof damage; and (6) whether the age of the roof bars any recovery for damage to same. Def. SUF ¶ 17.

During the course of this litigation, Plaintiff submitted a business income claim under the Policy. *Id.* ¶ 36. The Policy provides as follows with regard to the Period of Liability applicable to business income claims:

> 1. The Period of Liability applying to all TIME ELEMENT coverages, except Leasehold interest and as shown below, or if otherwise provided under the TIME ELEMENT coverage extensions, is as follows:
>
>   a. For building and equipment, the period of time:
>
>     I. starting on the date of physical loss or damage insured by this POLICY to INSURED PROPERTY; and
>
>     II. ending when with due diligence and dispatch the building and equipment could be repaired or replaced with current materials of like size, kind and quality and made ready for operations; under the same or equivalent physical and operating conditions that existed immediately prior to such physical loss or damage.
>
> Such period of time is not limited by the POLICY expiration date.

Policy at 27. Plaintiff claims that the Period of Liability extends from the date of the initial loss on June 10, 2020, and remains ongoing due to Defendant's failure to pay the amount claimed. Def. SUF ¶¶ 42-43.

4

Plaintiff alleges that Defendant is obligated to submit to the appraisal process pursuant to the terms of the Policy, while Defendant maintains that coverage issues make appraisal inappropriate. Plaintiff moved for an Order to Compel Appraisal on March 3, 2022, which I denied without prejudice to a future motion for summary judgment. *See* ECF Nos. 30, 36. The Parties now cross-move for summary judgment on the issues of appraisal, whether the Period of Liability under the policy may include alleged delays caused by Defendant, and whether Plaintiff's breach of contract claim can support consequential damages for breach of the implied covenant of good faith and fair dealing.

## DISCUSSION

I. Legal Standard

To succeed on a motion for summary judgment, the moving party must show that "there is no genuine issue as to any material fact and that [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A "genuine issue" of "material fact" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the" nonmoving party. *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (citations omitted). However, "[m]ere speculation and conjecture is insufficient to preclude the granting of the motion." *Harlen Associates v. Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001).

II. Appraisal

Defendant argues that appraisal is not appropriate because the Parties' disputes concern the scope of coverage. Indeed, New York law precludes the use of appraisal to resolve disputes between insurers and policyholders where coverage issues exist. "It is well-established

5

that the scope of coverage provided by an insurance policy is a purely legal issue that cannot be determined by an appraisal, which is limited to factual disputes over the amount of loss for which an insurer is liable." *Duane Reade, Inc. v. St. Paul Fire & Mar. Ins. Co.*, 411 F.3d 384, 389 (2nd Cir. 2005). Specifically, Defendant identifies the following disputes it characterizes as coverage issues: (1) whether direct physical loss or damage occurred during the relevant Policy period; (2) whether the loss constituted a "prior loss"; (3) whether the loss was barred by the wear and tear exclusion in the Policy; (4) whether the age of the roof restricts the valuation of any damage to actual cash value; (5) whether the cosmetic damage exclusion in the Policy bars coverage for any roof damage; and (6) whether the age of the roof bars any recovery for damage to same. Def. SUF ¶ 17.

Plaintiff argues that the alleged "coverage issues" identified by Defendant are in reality nothing more than factual disputes pertaining to causation and the amount of loss. I agree. First, with regard to the issue of "whether direct physical loss or damage occurred during the relevant Policy period," no genuine dispute exists. Defendant conceded that physical loss or damage occurred during the relevant Policy period by assuming partial coverage for the loss. *See* Pl. SUF ¶¶ 13-15. While Defendant correctly notes that assumption of partial coverage does not automatically eliminate the possibility of additional coverage issues, *Milligan v. CCC Information Services, Inc.*, 920 F.3d 146, 154 (2nd Cir. 2019), acceptance of coverage does eliminate the possibility that this particular coverage question remains in issue. The dispute which damage was caused by the June 10 windstorm or by the July 13 windstorm goes to causation.

Turning to the remaining five coverage issues claimed by Defendant, none of them requires the Court to interpret the meaning of the terms of the insurance contract or opine

6

on the scope of coverage. Plaintiff does not dispute that the Policy offers no coverage for damage from "prior loss," "wear and tear," or "cosmetic damage." Similarly, Plaintiff does not dispute that the age of the roofs would affect the amount recoverable and has provided undisputed documentary evidence that the roofs are less than 20 years old. *See* Pl. Mem. in Support, ECF No. 61, at 17. There are no genuine legal disputes regarding the terms of the Policy. All that remains are factual questions relating to damages, and damage issues are appropriate for appraisal. *See Zarour v. Pac. Indem. Co.*, 113 F. Supp. 3d 711, 715-16 (S.D.N.Y. 2015) ("[A]pportioning damage causation" is "essentially a factual question . . . to be resolved by making factual judgments about events in the world, not legal analyses of the meaning of the insurance contract. . . . Therefore, the issue of damage causation is properly subject to appraisal.") (citing *Amerex Grp., Inc. v. Lexington Ins. Co.*, 678 F.3d 193, 206 (2d Cir.2012)).

Finally, Defendant appears to argue that additional coverage issues exist in connection with the appropriate Period of Liability for the business income claim that Plaintiff submitted during the course of this litigation. The Court resolves this dispute below. Because no genuine coverage issues remain, appraisal is warranted.

III. Period of Liability

Defendant seeks partial summary judgment regarding whether the Period of Liability for which Plaintiff may recover income losses can include delays caused by Defendant's alleged failure to pay amounts owed under the Policy. The relevant Policy language provides that the Period of Liability "start[s] on the date of physical loss or damage insured by this [Policy]; and . . . end[s] when with due diligence and dispatch the building and equipment could be repaired or replaced with current materials of like size, kind and quality and made ready

for operations; under the same or equivalent physical and operating conditions that existed immediately prior to such physical loss or damage." Policy at 27.

The Parties agree that it is well-established that the Period of Liability is "a theoretical calculation reflecting the length of time required with the exercise of due diligence and dispatch to rebuild, repair or replace the damaged premises." *G&S Metal Consultants, Inc. v. Cont'l Cas. Co.*, 200 F. Supp. 3d 760, 769 (N.D. Ind. 2016); *see also Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 398 (2d Cir.2005); *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Properties, LLC*, No. 01 CIV.9291(MBM), 2005 WL 827074, at *3-4 (S.D.N.Y. Feb. 15, 2005), opinion clarified, No. 01 CIV. 9291HB, 2007 WL 519245 (S.D.N.Y. Feb. 16, 2007). However, Plaintiff contends that the Period of Liability may be extended by delays caused by the insurer. Defendant seeks a declaration that the Period of Liability may not include any alleged delays, including those caused by the insurer.

I agree with Plaintiff. An insurer's delay in paying amounts to repair an insured property may affect the theoretical period needed to repair such property. *See Streamline Capital, L.L.C. v. Hartford Cas. Ins. Co.*, No. 02 Civ. 8123, 2003 WL 22004888, at *7 n. 5 (S.D.N.Y. Aug. 25, 2003) ("Several cases from other jurisdictions support the view that a delay in payment may have a direct effect on the timing of an insured's resumption of business."). *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Properties, LLC*, No. 01 CIV. 9291, 2005 WL 827074 (S.D.N.Y. Feb. 15, 2005), cited by defendant, holds only that the time to make repairs is a theoretical, not an actual, calculation, but does not dispute the general rule that an insurer's delay can add to the theoretical time-period.

The language of the policy is clear: the Period of Liability "end[s] when with due diligence and dispatch the building and equipment *could* be repaired or replaced[.]" Policy at 27

8

(emphasis added). The key inquiry for the theoretical calculation is when Plaintiff *could have* repaired or replaced the relevant property. It follows that any facts affecting the insured's ability to repair the property with due diligence and dispatch are proper considerations for the theoretical calculation. *See* 2005 WL 827074, at *6 (citing *United Land Investors, Inc. v. Northern Ins. Co. of Am.*, 476 So.2d 432, 437-38 (La.Ct.App.1985) (extending restoration period to account for delays caused by insurers); *Eureka-Security Fire & Marine Ins. Co. v. Simon*, 1 Ariz.App. 274, 401 P.2d 759, 763-64 (Ariz.Ct.App.1965) (extending restoration period for delays caused by insurers and landlord. An insurer's delay in payment may affect the calculation when an insured could have repaired or replaced the premises. Whether Defendant's delay in payment actually impacted Plaintiff's ability to repair or replace the Property is a disputed issue of fact. Accordingly, the Court denies Defendant's motion for partial summary judgment.

IV. Covenant of Good Faith and Fair Dealing

It is well-settled that New York law does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when there is a valid and enforceable contract governing a particular subject matter. *See CJI Trading LLC v. JPMorgan Chase Bank, N.A.*, No. 20-CV- 4294, 2021 U.S. Dist. LEXIS 97001, at *11–12 (S.D.N.Y. May 21, 2021) (dismissing duplicative claim for breach of the implied covenant where claims were ground in the same actions as breach of contract claim) (citing *Harris v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73, 82 (2d Cir. 2002)); *Bentivoglio v. Event Cardio Grp., Inc.*, No. 18-CV-2040, 2019 U.S. Dist. LEXIS 206381, at *18–19 (S.D.N.Y. Nov. 27, 2019) (dismissing unjust enrichment claim as duplicative of claim based on valid and enforceable contract) (citing *Rabin v. Mony Life Ins. Co.*, 387 Fed. App'x 36, 42 (2d Cir. 2010)).

9

However, Plaintiff has not stated a separate cause of action for breach of an implied covenant of good faith and fair dealing. The allegation is used to describe the breach, and not to allege a separate cause of action. Whether the breach of a covenant of good faith and fair dealing can support a claim for consequential damages, is not a question that has to be decided. *Compare Sikarevich Fam. L.P. v. Nationwide Mut. Ins. Co.*, 30 F. Supp. 3d 166, 172 (E.D.N.Y. 2014) (plaintiff may be entitled to consequential damages on its breach of contract claim, beyond the limits of its Policy, based on bad faith.") (citation omitted); *Acquista v. New York Life Ins. Co.*, 285 A.D.2d 73, 82, 730 N.Y.S.2d 272 (1st Dep't 2001) (allegations of an insurer's bad faith conduct "may be employed to interpose a claim for consequential damages beyond the limits of the policy for the claim[ed] breach of contract"), *with Bi-Econ. Mkt., Inc. v. Harleysville Ins. Co. of New York*, 10 N.Y.3d 187, 886 N.E.2d 127 (2008); *Globecon Grp., LLC v. Hartford Fire Ins. Co.*, 2003 WL 22144316, at *3 (S.D.N.Y. Sept. 17, 2003) ("The Second Circuit Court of Appeals, the New York Court of Appeals, other courts in the Southern District, and this court have all held consistently that [consequential] damages are unavailable in insurance cases, unless the plaintiff alleges that the specific injury was of a type contemplated by the parties at the time of contracts.") (collecting cases)).

Defendant's motion to strike Plaintiff's allegations of bad faith is denied.

## CONCLUSION

For the reasons provided above, Plaintiff's motion for summary judgment is granted, and Defendant's motion for partial summary judgment is denied. The Clerk of the

Court shall terminate the motions (ECF Nos. 55, 60). The parties shall appear for a status conference on June 2, 2023, at 10:00 a.m., to regulate further proceedings.

        SO ORDERED.

Dated:    May 10, 2023
           New York, New York

                              ALVIN K. HELLERSTEIN
                              United States District Judge